UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 07-CR-0178-L |
| ) | |
| Plaintiff, ) | **ORDER FOLLOWING TRIAL** |
| ) | |
| v. ) | |
| ) | |
| CHO-ING TSENG, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I.   INTRODUCTION

On January 26, 2007, a federal grand jury indicted Defendant Cho-Ing Tseng ("Defendant" or "Tseng" ) on five counts of wire fraud, in violation of 18 U.S.C. §1343. On February 5, 2007, Defendant was arraigned on the indictment and entered a plea of not guilty. Defendant's first trial resulted in a mistrial on May 29, 2007, after the jury indicated that it was unable to reach a verdict. Defendant's second jury trial began October 2, 2007. At the close of the Government's case-in-chief, Tseng moved for a judgment of acquittal, pursuant to Rule 29. Additionally, Defendant moved for mistrial due to the introduction of testimony by Venezuelan law enforcement agents and again during the cross examination of the Defendant.

## II.   FACTS

The Government alleges that beginning early December 2006 through early January 2007, Tseng and his accomplice, Elena Lee ("Lee"), engaged in a false kidnaping scheme by faking the Defendant's abduction in Venezuela. Defendant and Lee allegedly sought a fraudulent ransom payment from Tseng's family members within the United States in order to secure Tseng's theoretical release. During that time, Defendant and Lee made numerous phone calls to Tseng's wife and children and left several voice messages on the home answering machine. Defendant and Lee both contacted Tseng's wife and children individually. Lee conveyed that she was the "go between" and could assist in Defendant's release from captivity. The content of these phone calls led Tseng's wife and children to believe that Defendant had been kidnaped by business clients defrauded by Tseng's business partner Estefano Renzo Alvarado. According to Defendant and Lee, the clients wanted their money back and would kill Defendant if the ransom was not paid. Defendant and Lee both asked Tseng's wife and children not to go to the police.

Believing that Defendant's life was in danger, however, his wife and children contacted the United States Embassy in Caracas, Venezuela on December 28, 2006. Shortly thereafter, the Federal Bureau of Investigation ("FBI") became involved, as did the Venezuelan law enforcement agency *Cuerpo de Investigaciones Cientificas, Penales y Criminalisticas* ("CICPC"), Kidnaping and Extortion Division. CICPC Officer Flor Cordero ("Officer Cordero" or "CICPC Officer Cordero") summoned Lee to appear at the local prosecutor's office for questioning regarding the alleged kidnaping. Lee indicated to Officer Cordero that she had no knowledge of the alleged kidnaping, that Defendant had not been kidnaped, and that Defendant had accompanied her to the building to prove that he was alive and well.

Soon after speaking to Lee, Officer Cordero met with Defendant. Officer Cordero informed Defendant about the kidnaping report filed by his family with the U.S. Embassy in Venezuela, along with the FBI's involvement in the matter. Defendant maintained that he had not been kidnaped, although he offered no clarification or explanation at that time. During a later investigation, Defendant provided a signed handwritten statement to the federal authorities

admitting that he made duplicitous phone calls to his wife and children, which erroneously caused them to believe he had been kidnaped. Defendant also admitted to Lee's participation in the kidnaping scheme.

### III.   DISCUSSION

A.   Rule 29 Motion

Rule 29(a) requires a court to enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). In considering a Rule 29 motion, the Court "must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Merriweather*, 777 F.2d 503, 507 (9th Cir. 1985) (internal quotation and citation omitted). At the close of the Government's case-in-chief, Defendant moved for a judgment of acquittal, pursuant to Rule 29. The trial court may, as the Court did in this case, reserve decision on a Rule 29(a) motion. Fed.R.Crim.P. 29(b). If the Court does reserve decision, the Court must decide the motion on the basis of the evidence presented to the jury at the time the ruling was reserved. *Id.* Now, viewing "the evidence [as it was] at the time the ruling was reserved," *Id.*, the Court **DENIES** Defendant's motion for acquittal.

Defendant maintains that the Government failed to present independent evidence of the Defendant's intent to defraud, and instead relied exclusively on the Defendant's statement's to the authorities as evidentiary support in violation of the traditional *corpus delicti* rule. In *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the Supreme Court reaffirmed the traditional *corpus delicti* rule whereby a defendant may not be convicted based solely on his own admissions. The Ninth Circuit has since interpreted *Opper* to impose a "two-pronged" corroboration requirement. *See e.g., United States v. Lopez-Alvarez*, 970 F.2d 583 (9th Cir. 1992). While the Government need not introduce independent evidence of the *corpus delicti* in conformance with the traditional test, "it must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred." *Id*. at 592. Additionally, the Government "must introduce independent evidence tending to establish the trustworthiness of

the admissions, unless the confession is, by virtue of special circumstances, inherently reliable."
*Id.*

Independent evidence of the Defendant's intent to defraud was properly presented at trial. For instance, the following testimony was elicited during the direct examination of Defendant's wife, Anita Tseng:

> Q: I am taking about on January 13th. Did Elena give you any advice on what you should tell the authorities if questioned about what happened[?]
>
> A: She didn't give me advice. She only told me that over there my husband was not kidnapped. She wanted us to understand what our understanding was[,] was not what really happened there.

Additional independent evidence introduced during the trial included: (1) testimony that deadlines for ransom payments passed without consequence; (2) testimony that ransom demands came solely from Defendant and Lee, as opposed to directly from the purported kidnapers; (3) testimony regarding the changing ransom amounts; (4) testimony that Defendant answered his own cell phone without interference from his "captors" on repeated occasion; (5) testimony that Defendant called his wife on January 5, 2007, and berated her for contacting the authorities, moments after a heated phone conversation took place between Lee and Defendant's wife who urged Lee to contact the police; and (6) testimony that Defendant was allowed to leave without the ransom demands being met.

Upon consideration of this corroborating evidence, the Court is satisfied that the Government's case did not exclusively rely on Defendant's confession. There is sufficient independent evidence establishing that the criminal conduct occurred at the core of the offense, Defendant's Rule 29 motion is therefore **DENIED**.

B.      Motion for Mistrial

During the trial, Defendant also moved for mistrial on the grounds of prosecutorial misconduct due to the introduction of testimony by Venezuelan law enforcement agents, CICPC Officers Flor Cordero and Nancy Albarracin-Gomez. Defendant argues *inter alia* that the Government violated the Jencks Act, as well as its discovery obligations, by not providing

Defendant with Venezuelan police reports associated with the officers' testimony; and this violation should have prevented the officers' testimony in its entirety. However, the documentation Defendant sought, if it even existed, remained in the exclusive possession of the Venezuelan government by and through its law enforcement agents, Officers Cordero and Albarracin-Gomez. Defendant also objects to the introduction of related testimony pertaining to certain cell phone records discovered during the investigation on the grounds of hearsay.

1.  Jencks Act Material

The Jencks Act requires the Government to produce any written statements by a Government witness relating to the subject matter of any direct testimony by that witness. 18 U.S.C. § 3500(b). The Jencks Act defines a statement as "a written statement made by said witness and signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e)(1). The Defendant must submit a proper request to the district court for the Government to produce the Jencks statements. 18 U.S.C. § 3500(b); *United States v. Burke*, 506 F.2d 1165, 1167-1168 (9th Cir. 1974). A district court's denial of a motion to produce a witness' statement pursuant to the Jencks Act is generally reviewed for an abuse of discretion. *United States v. Cowley*, 720 F.2d 1037, 1040 n. 1 (9th Cir. 1983).

The Government maintained that the Jencks Act did not apply because the documentation sought by the Defendant is not (and has never been) in the possession of the United States. The Court agreed with the Government, and determined that no Jencks violation had occurred. The one decision that squarely considered the application of the Jencks Act to documents in the possession of a foreign government ruled the Act inapplicable. *United States v. Friedman*, 593 F.2d 109, 120 (9th Cir.1979). In *Friedman,* the Ninth Circuit held that the Jencks Act did not require production of a defendant's diary because the United States did not have "possession or control" of the diary where the Chilean government seized the diary and retained possession of it. *Id.* at 119-120. Even in the course of a joint investigation undertaken by the United States and foreign law enforcement officials, the most the Jencks Act requires of United States officials is a good-faith effort to obtain the statements of prosecution witnesses in the possession of the foreign government. *See United States v. Paternina-Vergara*, 749 F.2d 993, 998 (2d Cir. 1984).

The Court took testimony of Assistant Legal Attache Alisa Villa, a Special Agent with the FBI, who was located at the Embassy in Caracas, Venezuela. Agent Villa testified that she attempted to obtain reports of the Venezuelan investigation both in writing and by telephone. The requests were denied. At trial, CICPC Officer Cordero testified that no reports were in fact ever written. Accordingly, the Court found that a good faith attempt was made by the Government to obtain Jencks Act material. Since the Government did not violate the Jencks Act, it was not necessary to strike the testimony of the Venezuelan law enforcement agents on that basis.

2.   CICPC Officers' Testimony Concerning Venezuelan Cell Phone Records

Defendant takes separate issue with certain testimony elicited by the Venezuelan officers pertaining to cell phone records discovered during their investigation. Specifically, CICPC Officer Cordero testified that, in the course of her investigation, she studied Defendant and Lee's cell phone records for the time period of October 2006 to January 2007. Officer Cordero discovered that Defendant's cell phone was used in numerous locations around Venezuela during that time period, and that Defendant and Lee were in frequent contact with one another daily, at all times of the day and night. Officer Cordero also testified to the number of cell phone calls made from Defendant to Lee's cell phone in Venezuela. Defendant objected to the introduction of this testimony as impermissible hearsay.[1]

The Court allowed this testimony solely for the non-hearsay purpose of providing the jury with the context of the Venezuelan agents' decision to alter their kidnaping investigation of the Defendant from one of victim to one of possible perpetrator. Officer Cordero was allowed to explain what actions she took as a result of reviewing the cell phone records. A jury instruction was given on this issue. The jury was instructed that the officers' testimony regarding the cell phone records was not being offered for the truth of the matter asserted, rather its exclusive

---

[1] Defendant now argues that the testimony also violated the "Best Evidence" rule and should have been excluded on that ground. Defendant's "best evidence" objection, while valid, was not timely raised and therefore waived. Defendant neglected to state the objection during trial, and instead raises it for the first time in Defendant's written motion (well after the introduction of the evidence). It is well settled that an untimely objection is treated as no objection at all. *See United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (a constitutional right "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it") (internal quotation and citation omitted).

purpose was to explain the conduct taken, in other words, the effect on the officers' investigation. The Court's instruction, therefore, appropriately confined the jury's consideration of the cell-phone testimony to non-hearsay purposes.

Similarly, Officer Cordero explained that she interviewed Defendant's business partner, Estefano Renzo Alvarado, after reviewing the cell phone records, also as part of her investigation. This testimony was allowed to again show the effect on the investigation. The Court, however, did not allow specific testimony by Officer Cordero regarding what was said during the interview with Estefano Renzo Alvarado as such statements would clearly be hearsay in nature. The conduct testimony was relevant to show the officer's state of mind as to the changing nature of her investigation and that, in her mind, there had not been a kidnaping. Such information was also necessarily conveyed to the United States Embassy agents and the FBI who could not themselves conduct investigations in Venezuela, a foreign country.[2] The Court should not exclude legitimate non-hearsay testimony regarding conduct when, as is the case here, there are independent investigations conducted simultaneously by two separate countries.

The Sixth Amendment does not bar out-of-court statements when the statement is not offered to prove the truth of the matter asserted; thus, the Sixth Amendment poses no bar to the admission of non-hearsay statements. *See Crawford v. Washington*, 541 U.S. 36, 60 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). When out-of-court statements are not offered to prove the truth of the matter asserted, the Confrontation Clause is satisfied if the defendant had the opportunity to cross-examine the person repeating the out-of-court statement. *See Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985); *see also United States v. James*, 487 F.3d 518, 525 (7th Cir. 2007) (the admission of an FBI agent's testimony about what an informant had told him concerning the informant's prior drug dealings with a defendant who was being prosecuted for a drug offense did not violate the Confrontation Clause, since the

---

[2] The Court does not construe the sharing of this information to mean that the Venezuelan authorities were working for the United States Embassy or the FBI. Originally, Defendant was regarded as a kidnap victim by the United States Authorities when they undertook their independent investigation. If the United States Government was not informed of Defendant's status by the Venezuelan authorities, the United States would not be able to help the purported victim or that victim's family.

testimony was only admitted for the non-hearsay purpose of providing context for the government's decision to work with the informant, and the defendant had the opportunity to cross-examine the agent.) In this case, CICPC Officer Cordero, who reviewed the cell phone records and spoke with Estefano Renzo Alvarado, testified and the defense had the opportunity to cross-examine the officer regarding her inquiry.

        3.      Venezuelan Cell Phone Records used for Impeachment

Defendant also moved for a mistrial based on the Government's failure to disclose certain evidence that was used for impeachment of the Defendant. Specifically, Defendant objected to the Government's use of Venezuelan cell phone records used during the Defendant's cross-examination. Defendant argued that the records should have been disclosed prior to trial pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Fed.R.Crim.P. 16. The Court denied the mistrial finding that the documents were neither *Brady* nor Rule 16 material.

Instead, the Court ruled that the records were admissible for impeachment purposes under Fed.R.Evid. 607. A hearing outside the presence of the jury was held to satisfy the Court that the documents were sufficiently trustworthy. In addition, defense counsel was given time to review the documents prior to their use by the defense. The cell phone records were obtained by FBI Special Agent Eaton who testified that he obtained the records directly from the Venezuelan phone company and the chain of custody was uninterrupted. Accordingly, the Court finds that the method used to obtain the records was sufficient to satisfy the trustworthiness of the cell phone records for impeachment purposes.[3]

---

[3] The jury was instructed that the phone records used during the Defendant's cross-examination were to be considered for impeachment purposes only. After that instruction, the defense offered the cell phone records into evidence as substantive evidence and the jury was then informed as to the change in the nature of the evidence.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion for a judgment of acquittal pursuant to Rule 29 and Defendant's motions for mistrial are **DENIED**.
**IT IS SO ORDERED.**

DATED: October 30, 2007

_____
M. James Lorenz
United States District Court Judge